UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA K. STUART,

        Plaintiff,

Case No. 08-14591

v.

District Judge Nancy G. Edmunds
Magistrate Judge R. Steven Whalen

CVS CORPORATION, HARTFORD LIFE
AND ACCIDENT INSURANCE CO.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

Before the Court is a Complaint for Long Term Disability ("LTD") benefits brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et. seq.* Plaintiff's *Motion for Summary Judgment* [Docket #15] and Defendants CVS Corporation and Harford Life and Accident Insurance Company's *Motion to Affirm the Administrator's Decision* [Docket #18] have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). Because the Administrator acted arbitrarily and capriciously in denying LTD benefits, I recommend that Defendants' motion be DENIED and that Plaintiff's motion be GRANTED, awarding benefits retroactive to the date of termination.

      **I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, 60 at the time this motion was filed, worked formerly as an assistant manager for Defendant CVS Corporation ("CVS"). She was eligible for LTD benefits as of June 1, 2003 (AR, 349). Under the terms of the policy, issued by Defendant Hartford Life and Accident Insurance Company ("Hartford"), for the 24 months following the onset of disability, the claimant is eligible for benefits provided that she is:

"1) continuously unable to perform the *Material and Substantial Duties* of [the] *Regular Occupation*;

and

2) not *Gainfully Employed.*

After the *LTD Monthly Benefit* has been payable for 24 months, *Disability* means that *injury* or *sickness* causes physical or mental impairment to such a degree of severity that [claimant is]:

1) continuously unable to engage in any occupation for which [she is] or [would] become qualified by education, training or experience;

and

2) not *Gainfully Employed*"

(AR, 352)(emphasis in original).

On June 16, 2005, Plaintiff, diagnosed with a torn rotator cuff, informed CVS that she would be undergoing surgery (AR, 336). On June 30, 2005, orthopedic surgeon Dr. James Jasko performed the rotator cuff repair (AR, 336). In addition, on August 25, 2005, Plaintiff underwent an anterior lumbar fusion and discectomy, performed by neurosurgeons Gerald R. Schell and Ron Bays, M.D. (AR, 118, 316-317). On October 18, 2005, Plaintiff applied for LTD (AR, 326-327). The application was approved effective December 7, 2005 (AR, 32-

33). The following month, Plaintiff applied for Social Security Disability Benefits ("SSD") which were awarded on November 13, 2006 (AR, 150, 216). Administrative Law Judge ("ALJ") Regina Sobrino found that Plaintiff's "degenerative disc disease, degenerative joint disease, and joint disease of the shoulder" precluded all work.

On December 21, 2007, Hartford informed Plaintiff that her LTD benefits were discontinued as of the 24-month mark of the initial LTD eligibility (December 6, 2007) because she did no longer met "the policy definition of disabled" (AR, 51). Plaintiff appealed the non-disability finding, sending Hartford a copy of the SSA decision on January 3, 2008 (AR, 148). On April 18, 2008, she submitted a report prepared by Dr. Michael Sperl, a physical medicine and rehabilitation physician, following a February 19, 2008 examination (AR, 141). On May 9, 2008, she also provided Hartford with treating records of Dr. Schell, treating physician Dr. Richard Lingenfelter, Dr. Schell's physician's assistant Steven Lackie, and physical therapist Daniel P. Peterson (AR, 118-135).

In response, Hartford retained Dr. Howard Choi to conduct a non-examining review of Plaintiff's medical records. Reviewing the findings of her treating sources, Dr. Choi determined that Plaintiff could perform sedentary, light, or medium duty work[1] (AR, 39).

---

[1] The U.S. Department of Labor defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 404.1567(a-d).

On June 17, 2008, Marsha L. Macko, Appeal Specialist for Defendant Hartford, denied the appeal of the benefit's termination (AR, 38-41). Plaintiff filed suit in this Court on September 25, 2008.

## II. TREATING AND NON-EXAMINING SOURCES

### A. Plaintiff's Treating Sources

#### 1. Neurosurgeon Gerald Schell, M.D.

Dr. Schell performed a anterior lumbar diskectomy on August 25, 2005 (AR, 313, 316-317). In October, 2005, he noted that the surgery would require Plaintiff to be off work for three to six months (AR, 326). In February, 2006, Dr. Schell examined Plaintiff, noting that she was unable to lift over 10 pounds, climb, crouch, crawl and required a sit/stand option. He opined that she was unable to perform full-time work (AR, 307). On June 6, 2006, Dr. Schell found that Plaintiff was precluded from working "12 [to] 18 months" following the August, 2005 surgery (AR, 301). In completing a functional assessment the following week, Dr. Schell marked "yes" in response to the question of whether Plaintiff was capable of sedentary work with a sit/stand option, also commenting that "[p]atient must follow the job duties as stated above" (Tr. 183). On February 29, 2008, Dr. Schell stated that while Plaintiff's "lumbar spine should be well fused at this point in time," postoperative MRI imaging showed degenerative changes of the back (AR, 118). He opined that "as far as issues relative to employment," Plaintiff should seek an evaluation by "an occupational medicine physician" (AR, 118). On March 24, 2008, Dr. Schell's physician's assistant,

Steven Lackie, referencing the SSA's disability finding, stated that "Hartford doesn't understand" that Plaintiff "is totally and permanently disabled from any type of employment" (AR, 120). He noted that back problems predating the August, 2005 fusion created increasing functional limitations (AR, 120). He concluded that he would "he happy to write a letter" on behalf of her effort to obtain LTD (AR, 120).

### 2. Dr. Michael Sperl

Physical Medicine and Rehabilitation specialist Michael G. Sperl, M.D. examined Plaintiff on February 19, 2008, noting her complaints of right shoulder, low back, and knee pain (AR, 132). Plaintiff reported that her condition had improved since the August, 2005 fusion, but characterized her condition as "far from 100%," with problems lifting, standing, bending, and twisting (AR, 132). In regard to her rotator cuff tear, Plaintiff reported "only an occasional catching sensation in the shoulder" (AR, 133).

Dr. Sperl noted that Plaintiff did not use canes or crutches but that "her motions were slow, careful and bradykinetic[2] (AR, 134). An examination of the knees found "no palpable effusions," with a range of motion of "90% of expected normal" and "[n]o frank instability" (AR, 134). As to the lower back, Dr. Sperl noted that "[t]he lumbar curve was flattened," with a range of motion ("ROM") reduced by at least 50 percent (AR, 134). Plaintiff demonstrated ROM limitations of the right shoulder, but a 95 percent range on the left (AR,

---

[2] MedicineNet.com defines bradykinetic as a "slowed ability to start and continue movements, and impaired ability to adjust the body's position." http://www.medterms.com/script/main/art.asp?articlekey=11215.

134).

Dr. Sperl reviewed a December, 2004 MRI, noting "degenerative disc involvement at L5-S1" with "a broad-based bulge asymmetric to the right side at L5-S1" creating "compromise of the exiting L5 nerve" (AR, 135). He also observed a degenerative bulging at L4-5 and "[a] degree of acquired stenosis" (AR, 135). He opined that Plaintiff was precluded from all work, citing the "factors" of "degenerative arthritis, pre-existing lower back pathology, surgery, [and] her age" (AR, 135).

### 3. Dr. Richard Lingenfelter

On April 22, 2008, Richard Lingenfelter, M.D. noted that Plaintiff had returned for pain management treatment after an absence of over a year, remarking that she reported renewed back pain for the past three to four months (AR, 124). Plaintiff noted that she experienced "constant" back pain and "rare" shooting pains in her right leg and foot (AR, 124). Dr. Lingenfelter noted that a February, 2008 MRI showed "broad-based posterior disc protrusion at L4-L5" with "mild-to-moderate foraminal narrowing" (AR, 124). He diagnosed Plaintiff with "chronic low back pain and right lower extremity pain secondary to lumbar facet syndrome of bilateral L4-L5 and L5-S1 with a possibility of "failed back surgery syndrome" (AR, 126). Plaintiff expressed a willingness to undergo lumbar facet injections (AR, 127). The following week, injections were administered without complications (AR, 128). On May 8, 2008, Dr. Lingenfelter, citing the physical therapist Daniel P. Peterson's April, 2008 findings, found that Plaintiff was unable to work (AR 119).

### 4.  Physical Therapist Daniel P. Peterson

Physical Therapist ("PT") Daniel P. Peterson conducted a functional status evaluation on April 14, 2008, noting a history of lumbar cage fusion and a rotator cuff tear (AR, 121). Plaintiff reported that she was unable sit for more than 20 minutes, stand for more than 10, and walk for more than 30 (AR, 121). According to Peterson's findings, Plaintiff was unable to lift or push/pull more than 10 pounds (AR, 121-122). She was unable to sit for more than 15 minutes at a time and less than two hours in an eight-hour day (AR, 122). She was unable to stand for more than 10 minutes or walk for more than 15 (AR, 122). Peterson found that Plaintiff should be precluded from all bending, squatting, kneeling, and crawling (AR, 122). Plaintiff demonstrated an unimpaired ability to "feel," but was limited to the *occasional* manipulative activities of forward and above shoulder reaching, handling, and fingering (AR, 122). Noting that Plaintiff "demonstrated a combined effort of 100% during the tests and measures," Peterson opined that she was unable to perform any job (AR, 123).

### B.    Defendants' Non-Examining Medical Reviewer

### Dr. Howard Choi

Physical Medicine and Rehabilitation specialist Dr. Choi submitted a non-examining "Peer Review Report" to Defendant Hartford on June 16, 2008 (AR, 98-101). The report states that Dr. Choi called Dr. Lingenfelter's office on June 4, 2008 and was referred to staff nurse Marcie Welker (AR, 98). According to Dr. Choi's account, Ms. Welker stated that Plaintiff had undergone a radio-frequency ablation in December, 2006 with a followup

-7-

appointment in January, 2007. Plaintiff was next seen in April, 2008 after reporting renewed back pain over the past few months. The Report states that Welker did not know whether Plaintiff used "pain management services" between January, 2007 and April, 2008. The report states that Plaintiff received a lumbar facet injection in April, 2008 and reported the absence of pain at a May 27, 2008 followup appointment. Dr. Choi found that Dr. Lingenfelter's treating notes were absent indications that Plaintiff required home health care or the use of a cane. Welker indicated that the office "would defer on matters related to employment capacity to other physicians and the functional capacity evaluation." Dr. Choi remarked that Welker stated that Plaintiff "did not appear to have gross signs of a psychological or cognitive disorder." Dr. Choi reported that multiple attempts to contact Dr. Sperl were unsuccessful (AR, 98-99).

In addition to interviewing some of Plaintiff's treating sources, Dr. Choi's report states that he reviewed 64 pages of medical records that showed symptoms of depression and headaches, as well as wrist, chest, and back pain and shortness of breath (AR, 99). He acknowledged the August, 2005 fusion surgery, noting that although Plaintiff reported initial leg weakness post surgery, February and April, 2008 treating notes by Drs. Sperl and Lingenfelter did not mention leg weakness (AR, 99). Dr. Choi also noted that imaging studies conducted after the surgery showed no "spinal instability" or brain abnormality (AR, 99). Dr. Choi cited Dr. Sperl's February, 2008 opinion that although Plaintiff was functionally independent, her history of back surgery, along with "age and degenerative arthritis" precluded all work (AR, 99). He observed that Peterson's April, 2008 physical

-8-

therapy evaluation resulted in a finding that Plaintiff could tolerate walking for 15 minutes, sitting for 15, and standing for 10 (AR, 99-100). Dr. Choi reported that he spoke with Dr. Schell's physician's assistant, Steven Lackie, on June 4, 2008 by telephone, alleging that the PA opined that Plaintiff was capable of "sedentary (mostly sitting)" work (AR, 99).

Dr. Choi concluded that from December 7, 2007 to the date of his report, Plaintiff was capable of the exertionally medium work of lifting up to 20 to 50 pounds occasionally and/or 10 to 25 pounds frequently (AR, 100). He found "no clinical indication of a residual impairment in the right foot" or functional impairments of the knees (AR, 100). He rejected Dr. Sperl's February, 2008 finding that age, degenerative joint disease, and back surgery precluded Plaintiff from all work, stating that the treating physician's use of age as a factor in determining disability was unwarranted (AR, 100). He also discounted the April, 2008 physical therapy evaluation, stating that the conclusion were based on "self reported intolerances to the tested activities" (AR, 100). He found that the evaluator's conclusion that Plaintiff exerted "'100 effort'" was unsupported by the record (AR, 100).

### III. The Administrative Decision

The final denial of Plaintiff's request for LTD benefits was issued on June 17, 2008 by Marsha L. Macko, Appeal Specialist for Defendant Hartford (AR 38-41). The determination adopted Dr. Choi's conclusion that Plaintiff retained the capacity to bend and twist occasionally, lift 10 pounds constantly, 25 pounds frequently, and 50 pounds occasionally (AR, 38 *citing* 100). Macko cited Steven Lackie's alleged June 4, 2008 statement that Plaintiff was capable of sedentary work (AR, 39). Macko also adopted Dr.

Choi's rejection of Peterson's April, 2008 findings, stating that the PT's assessment was based on self-reports rather than clinical data (AR, 40).

The denial letter also states that "[t]he favorable decision rendered by the [SSA] was also considered during this review," but noted that Hartford was not bound by the SSA's guidelines for determining disability (AR, 40).

## IV.   STANDARD OF REVIEW

Under ERISA, when a plan administrator, such as Defendant in this case, has the discretionary authority to determine eligibility for benefits, federal courts review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168-69 (6th Cir. 2003)(*citing Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th cir. 1996)). "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)(internal citations and quotations omitted).

Nevertheless, "[d]eferential review is not no review, and deference need not be abject." *McDonald, supra*, 347 F.3d at 172 (internal citations omitted). *See also Hackett v. Xerox Corp. Long-Term disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003) ("Review under the deferential arbitrary and capricious standard is not a rubber stamp and

deference need not be abject. Even under the deferential review we will not uphold a termination when there is an absence of reasoning in the record to support it"); *Swaback v. American Info. Techs. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996) ("Although we review the committees' actions in a deferential light, we shall not rubber stamp their decisions."); *Finazzi v. Paul Revere Life Ins. Co.*, 327 F.Supp.2d 790, 796 (W.D. Mich. 2004) ("the Court is not obliged to 'rubber stamp' [defendant's] termination of benefits where, considering all the evidence, its reasoning is not trustworthy."). "Rather, it requires us to review 'the quality and quantity of the evidence and the opinions on both sides of the issues.'" *Kovach v. Zurich American Ins. Co.,* 587 F.3d 323, 328 (6th Cir. 2009)(*citing McDonald*, *supra,* 347 F.3d at 172 (internal punctuation omitted).

## V.   ANALYSIS

### A. Quality and Quantity of Evidence

A review of Plaintiff's medical files shows that Dr. Choi's non-examining conclusions stand at odds with the great weight of treating records and opinion. Of course, this by itself would not render Hartford's finding "arbitrary and capricious." Nonetheless, Dr. Choi's findings and by extension, Hartford's adoption of them, were not well reasoned. First, while one physician's assistant allegedly made a verbal statement that Plaintiff could perform sedentary work, I note that the medical files do not contain one scintilla of support for Hartford's finding that Plaintiff could perform exertionally *medium* work (AR, 99-100).

Second, the remainder of Dr. Choi's report amounts to more of a distortion, rather than a  summation, of the medical records. In finding that "[t]here is no clinical basis for

-11-

specific accommodations for sitting, standing or walking based on a lumbosacral fusion surgery and the records forwarded for review," he ignored Dr. Sperl's interpretation of an MRI showing significant degenerative changes as a result of arthritis *predating* the August, 2005 surgery (AR, 100, 135). Steven Lackie's March, 2008 assessment also states that Plaintiff's disability arose from back problems unrelated to the August, 2005 surgery (AR, 120). In support of the non-disability finding, Dr. Choi observed that treating records showed that her right foot was fine, a non-sequitur in view of the fact that she did not allege disability as a result of right foot problems (AR, 100).

As noted above*,* Dr. Choi discounted Dr. Sperl's conclusion that Plaintiff was disabled. However, he only partially addressed the examining physician's findings. Dr. Choi rejected Dr. Sperl's opinion that a combination of degenerative arthritis, pre-existing lower back pathology, surgery, and age rendered Plaintiff disabled, opining that "[t]here is no basis for using age as a factor that would preclude function" (AR, 100). However, he neglected to explain his reasons for rejecting Dr. Sperl's finding regarding degenerative arthritis, "pre-existing lower back pathology,"or surgery (AR, 100). Moreover, Dr. Choi did not address Dr. Sperl's interpretation of clinical data, in particular the imaging studies, instead stating incorrectly that Plaintiff's "self reported" limitations and symptoms "ha[d] not resulted in clinically demonstrable functional impairments" (AR, 100).

Next Dr. Choi cited his June, 2008 telephone conversation with Steven Lackie, reporting that the physician's assistant's stated that Plaintiff was capable of sedentary work (AR, 100). However, Dr. Choi's account stands at odds with Lackie's strongly worded

-12-

March 24, 2008 *written* assessment, which noted limitations as a result degenerative back disease predating the August, 2005 fusion surgery (AR, 120). Lackie's March, 2008 written assessment also states as follows:

> "[Plaintiff] has had a judgment through the courts that she is totally and permanently disabled from any type of employment, but it seems that the Harford doen't understand this and doesn't want to agree. She has a significant disability post-operatively from the anterior interbody fusion, not from the surgical approach itself, but from the disability that was caused prior to this . . . . we will be happy to write a letter for her explaining exactly what difficulties she has had for the Hartford"

(AR, 120). I note that although (1) Lackie offered to submit a *written* summary of Plaintiff's condition to Hartford and (2) Dr. Choi's account of Lackie's June, 2008 verbal statement contradicts the PA's most recent treatment records, neither Dr. Choi nor Hartford requested a written statement from Lackie. Given Lackie's strongly worded earlier statements supporting Plaintiff's disability claim, I find that Dr. Choi's account of the telephone conversation, with nothing else, was given inordinate weight by Hartford.

Dr. Choi also discredited PT Peterson's April, 2008 disability finding on the basis that "[t]here is no data . . . in the records forwarded for review that support [Peterson's] statement that the claimant made a '100 percent' effort during testing" (AR, 100 *citing* 123). Dr. Choi stated that Peterson's conclusions were "not documented to have been based on clinical data," but offered no other reason for his rejection of the PT's clinical *observations* (AR, 101).[3] Again, although Dr. Choi's findings regarding Peterson's assessment are unsupported,

---

[3] Physical therapists are trained to evaluate a patient's efforts when undergoing exertional testing. Given Dr. Choi's proclivity to selectively cherry-pick the medical

-13-

neither Dr. Choi nor Hartford attempted to supplement the assessment with additional information to confirm or refute the PT findings. For example, Hartford did not request an independent medical examination, although it reserved the right to do so under the Plan (AR, 363).[4]

Aside from rejecting source opinion in favor of disability, Dr. Choi offered little evidence supporting the opposite conclusion. Ironically, while Dr. Choi found that treating source opinions in favor of the disability claim were unsupported, his conclusion that the examining opinions were clinically unsupported was itself not supported, and indeed was contradicted by the record. Given that Hartford rejected Dr. Sperl, Lackie, and Peterson's post-examination clinical assessments in favor of a myopic non-examining evaluation, the quantity and quality of the evidence is insufficient to support the denial of LTD benefits. *Kovach v. Zurich, supra*.

### B. Conflict of Interest

Plaintiff also contends that the non-disability finding is tainted by Hartford's financial incentive to deny the claim, arguing that "a determination unfavorable to Plaintiff works to the Defendants' benefit because it saves them substantial money in not having to pay her any further benefits." *Plaintiff's Brief* at 16*, Docket #15*. As a matter of course, "a conflict of

---

records to support his non-disability finding, the question arises as to whether he would have been so dismissive of Peterson's conclusions if the physical therapist had found that Plaintiff gave *less than* 100 percent effort.

[4] See Section B, *infra*.

interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims, even when . . . the administrator is an insurance company and not the beneficiary's employer." *DeLisle v. Sun Life Assur. Co. of Canada,* 558 F.3d 440, 445 (6th Cir. 2009)(*citing Metropolitan Life Ins. Co. v. Glenn,* 128 S.Ct. 2343, 2348 -2350 (2008)). While this by itself does not invalidate the decision to deny benefits, "various circumstances affect the weight" accorded to the conflict. *Helfman v. GE Group Life Assur. Co.,* 573 F.3d 383, 392-393 (6th Cir. 2009)(*citing Glenn* at 2351).

Notably, Defendant Hartford conducted a non-examining "peer review" only. While there is "'nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination . . . . the failure to conduct a physical examination-- especially where the right to do so is specifically reserved in the plan--may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'" *Helfman,* 573 F.3d at 393 (*citing Calvert v. Firstar Fin. Inc.* 409 F.3d 286, 296 (6th Cir.2005)).

Consistent with *Helfman,* the "right to examine" was reserved in Hartford's plan (AR, 363). Hartford's decision to refrain from asserting its right to perform an IME (particularly in light of multiple disability opinions by treating sources) strongly suggests that Hartford's decision was colored by a conflict of interest.

### C. The SSA Determination

Plaintiff notes that although Hartford obtained counsel for her ultimately successful

application for SSA benefits pursuant to the LTD policy, Marsha Macko's June 17, 2008 denial of benefits omit consideration of the SSA's November, 2006 award of benefits. *Plaintiff' Brief* at 16-17.

"[A]n ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." *Whitaker v. Hartford Life and Acc. Ins. Co.,* 404 F.3d 947, 949 (6th Cir. 2005); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-33, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)(Unlike the rule in Social Security disability cases, treating physicians are not given deference in ERISA review). However, "[t]his is not to say . . . that the SSA determination is meaningless and should be entirely disregarded." *Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 294 (6th Cir. 2005).

In *DeLisle, supra*, the Sixth Circuit set forth a three-part inquiry for assessing the effect of Social Security Disability payments:

> "'[i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious.'"

*DeLisle,* 558 F.3d at 446 (*citing Bennett v. Kemper Nat'l Servs.,* 514 F.3d 547, 554 (6th Cir.2008).

Consistent with the first and second prongs, Hartford acknowledges that pursuant to the terms of the policy, it provided and paid for counsel in support of her SSD application,

-16-

later claiming a portion of the award to offset both previous and ongoing benefits under the LTD policy. *Reply* at 5, *Docket #22* (*citing* AR, 209, 362). As to the third factor, Hartford attempts to justify the its appeal denial's one-sentence statement that the SSA's determination "was considered," arguing that ALJ Sobrino's one-page November, 2006 opinion did not elucidate her reasons for the disability finding. *Defendants' Response* at 4, *Docket #17.* As such, Defendants argue that "Hartford had no information regarding the evidence that the SSA relied on in reaching its decision or how the SSA analyzed that evidence regarding functional limitations." Nonetheless, Hartford's final denial does not contain *any* substantive explanation of why its findings differed from the SSA's. Thus, the third prong of the *Bennett* test has been met and the Court may consider Hartford's treatment of the SSA decision in determining whether the LTD was arbitrary and capricious.

Further, the SSA's conclusion that Plaintiff was incapable of even sedentary work stands in almost absurd contrast to Macko's conclusion that Plaintiff (59 at the time of decision and diagnosed with arthritis of the spine) could lift up to 50 pounds for up to one-third of her working hours. The disparity between the two findings (along with the fact that no evidence of record supports the "50 pound" conclusion) lends further credence to Plaintiff's already well-supported argument that Hartford's denial of benefits was arbitrary and capricious (AR, 39, 150). Hartford's cavalier treatment of the SSA determination, combined with Hartford's uncritical adoption of Dr. Choi's erroneous findings and its failure to conduct an IME amounts to reversible error.

Having determined that administrator's findings were not well reasoned, the Court must next determine whether to remand for further fact-finding or an award of benefits. "'Where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled,' remand to the plan administrator is the appropriate remedy." *Helfman, supra,* 573 F.3d at 396 (*citing Cooper v. Life Ins. Co. of N. Am.,* 486 F.3d 157, 171 (6th Cir.2007)(internal citations and punctuation omitted)).

To be sure, the decision-making process was flawed.  However, in addition, the medical record overwhelmingly shows that Plaintiff is entitled to benefits. Aside from one disputed statement that Plaintiff could perform sedentary work as of June, 2008, *all* of her providing sources from December, 2007 forward either found her disabled or deferred to the opinion of occupational experts. Further, as discussed above, not one scintilla evidence supports Hartford's finding that Plaintiff could perform exertionally medium work. Because her entitlement is clear, I recommend that this case be remanded for an award of benefits "retroactive to the date on which they were terminated." *Glenn v. MetLife,* 461 F.3d 660, 675 (6th Cir. 2006).

## VI. CONCLUSION

For these reasons,  I recommend that Defendants' motion  be DENIED and that Plaintiff's motion be GRANTED, awarding LTD benefits retroactive to the date of termination.

-18-

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  January 21, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 21, 2010.

S/Susan Jefferson
Case Manager
